UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 06-586-C

OWENSBORO MERCY HEALTH
SYSTEM, INC., ET AL.,                                                    PLAINTIFFS,

V.                            MEMORANDUM OPINION AND ORDER

WILLIS NORTH AMERICA,
INC., ET AL.,                                                          DEFENDANTS.

* * * * * * * * * * *

        This matter is before the court on the motion of Willis North America, Inc. for

judgment on the pleadings (R. 57), the motion of Willis Administrative Services

Corporation for summary judgment (R. 59), the motion of both defendants for

sanctions (R. 58), and the parties' joint motion to revise the scheduling order (R. 77).

The court will grant the motion for judgment on the pleadings and the motion to revise

the scheduling order, grant in part the motion for sanctions, and grant in part and deny

in part the motion for summary judgment.

I.      Background

        The plaintiff, Kentucky Hospital Service Company of Kentucky, LLC, formerly

known as Kentucky Hospital Service Corporation and doing business as Coverage

Option Associates (collectively "COA"), entered into a master services agreement

("MSA") with Willis Administrative Services Corporation ("WASC") on April 1, 1999.

Under the MSA, WASC agreed to serve as the third-party administrator for COA's self-

funded employee benefit plans, the TrustCare Health Plan and the Trust Care Dental

Plan, which served COA's clients, including the additional plaintiffs in this action, Owensboro Mercy Health System, Inc., St. Joseph Healthcare, Inc., Clark Regional Medical Center, Highlands Hospital Corporation, Pineville Community Hospital Association, Inc., Murray-Calloway County Public Hospital Corporation, Rockcastle Hospital and Respiratory Care Center, Inc. (collectively "the hospitals").

In 2002, WASC discovered that certain clients of COA had overpaid claims because of an error in WASC's claims processing system.   WASC informed the affected clients and attempted to recover some of the overpayments, and COA subsequently terminated the MSA.   A dispute among the parties developed regarding the amounts of overpayment and whether the defendants are liable for it.   In 2003, the plaintiffs hired Healthcare Consulting Benefits Review, LLC ("HCBR") to audit claims-related data submitted by WASC.   The parties disagree over whether that data was complete and in a useable form.   Eventually, the plaintiffs filed the instant action on November 16, 2006, against WASC and Willis North America, Inc. ("WNA"), an indirect parent company of WASC.

## II.   Analysis

### A.   Motion for Judgment on the Pleadings

The court will grant WNA's Rule 12(c) motion for judgment on the pleadings because it is not a proper party to this lawsuit.   "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."   *JPMorgan Chase Bank,*

2

*N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Winget*, 510 F.3d at 582).

WNA was not a party to the MSA and did not have any involvement in the alleged wrongful conduct by WASC. WNA never acted as an agent of WASC, and its only relationship to WASC is that of an indirect parent company. WNA is thus entitled to judgment as a matter of law.

The plaintiffs have no objection to the dismissal, but they seek a dismissal without prejudice, on the condition that WASC "stipulates or admits that it is the proper party and is adequately capitalized and insured to date." R. 67. The plaintiffs failed to state any reasons or supporting authority for that request, and the court will not impose such a condition, so the dismissal will be with prejudice.

B. **Motion for Summary Judgment**

The court will grant WASC's motion for summary judgment to the extent it is directed at the hospitals because they are not parties to or beneficiaries of the contract. The court will permit COA's breach-of-contract claim to survive because discovery has not been completed, but will dismiss all other claims. COA's claim for gross negligence is legally insufficient because COA does not state facts that will permit the court to conclude that WASC acted with malice, willfulness, or wanton disregard for COA's rights. As for the promissory-estoppel claim, it is adequately

addressed by the breach-of-contract claim.  Finally, COA cannot recover attorneys' fees because no statute or contract entitles it to such fees.

>    1.    *Hospitals' Claims of Breach of Contract, Gross Negligence, and Punitive Damages*

The claim of the hospitals for breach of contract fails as a matter of law because the hospitals are neither parties nor third-party beneficiaries of the contract. "Ordinarily, the obligations arising out of contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except . . . under certain circumstances, by a third-party beneficiary." *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (quoting 17A Am. Jur. 2d, *Contracts* §425 (1991)).  Therefore, "[a]s a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto." *Id.  See also Sexton v. Taylor County, Kentucky*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985) ("It is the law in this jurisdiction that no stranger to a contract may sue for its breach unless the contract was made for his benefit").

The hospitals clearly are not parties to the MSA.  The first sentence of the MSA states that it is an "[a]greement . . . by and between Willis Administrative Services Corporation . . . and Coverage Options Associates . . . ."  R. 11-2, at 1.  Nothing in the MSA indicates that the hospitals are parties or privies to it.  Because they are not parties to the MSA, the hospitals cannot sue for breach of contract.

Likewise, the hospitals are not entitled to pursue a breach-of-contract claim as third-party beneficiaries. Section 15 of the MSA clarifies that:

> Notwithstanding the Client Agreement which each Client shall execute acknowledging their responsibilities under this Agreement, in the form attached hereto as Attachment D, nothing contained in this Agreement shall constitute a Client, or any other person, a party to, or third party beneficiary of, this Agreement.

R. 11-2, at 7. The hospitals admit that "the MSA defines 'Clients' as 'the employers who have adopted or may adopt the Plans' and that the Plaintiff Hospitals were, at one time, employers who had adopted the Plans." R. 59-3, at 3. The language of the MSA unambiguously indicates that WASC and COA did not intend for the hospitals, as "Clients," to be third-party beneficiaries of the MSA. However, if that language were ambiguous, the client-service agreement dispels any possible ambiguity by stating that the Client "[a]grees to the limitations imposed on [it] by the Master Agreement and the rights of WASC under the Master Agreement, including but not limited to . . . d) the fact that Client is not a third party beneficiary of the Master Agreement . . . ." R. 11-3, at 6.

Because the contract is unambiguous, the court rejects the plaintiffs' suggestion for an examination of the course of dealings between the parties. When a contract is unambiguous, the court looks "only as far as the four corners of the document to determine [the parties'] intent." *Abney v. Nationwide Mutual Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006).

Further, even if the MSA did not preclude the hospitals from being considered

5

third-party beneficiaries, the hospitals cannot demonstrate such status.  "Only a third-party who was intended by the parties to benefit from the contract, namely, a donee or creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right."  *Presnell*, 134 S.W.3d at 579 (citing *Sexton*, 692 S.W.2d at 810).  The hospitals do not allege that COA entered into the MSA to make a gift to them; nor do they allege that the MSA was made in order to satisfy a duty or liability owed to them by COA.  *See Sexton*, 692 S.W.2d at 810 (defining donee and creditor beneficiaries).  Thus, they are not donee or creditor beneficiaries and have no right to recover based on a breach of the MSA.

WASC also is entitled to judgment as a matter of law on the hospitals' claim for gross negligence.  Negligence requires "a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff."  *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436-437 (Ky. Ct. App. 2001).  Under Kentucky law, "one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in breach of contract."  *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F.Supp. 1371, 1381 (W.D.Ky. 1987) (quoting *Penco, Inc. v. Detrex Chemical Industries*, 672 S.W.2d 948, 951 (Ky. Ct. App. 1984)).  Because the hospitals are not parties to the MSA, they cannot rely on it to "maintain an action for breach of a duty based on any supposed contractual relationship between the parties [to the contract]."  *Id.*  Other than the MSA, the hospitals have not identified any source for WASC's alleged duty.  Therefore, their claim for gross negligence fails as a matter of law.  Furthermore, without the claim for

6

gross negligence, the hospitals cannot recover punitive damages.[1]

### 2.    COA's Claim of Breach of Contract

Before the completion of discovery, it would be premature to grant summary judgment concerning COA's claims for breach of contract regarding the alleged overpayments.  Under the MSA, "WASC shall have neither the responsibility nor the obligation to take any action, legal or otherwise, against COA, any Client, any Plan participant or any other person to enforce the provisions of the Plans."  R. 11-2, at 7 (MSA, §17).  However, WASC agreed to "undertake reasonable efforts to recover any loss resulting from an error in the processing of a claim under a Client's Schedule of Benefits, but shall not be required to initiate legal proceedings for such purposes."  *Id.* Because discovery is not complete, it would be premature to grant summary judgment at this time.

Similarly, the court will deny WASC's motion for summary judgment on the breach-of-contract claim involving its alleged failure to produce data as required by the MSA.  Under Section 12 of the MSA, WASC must "make available to COA or its designee, within thirty (30) days, for COA's collection and retention at COA expense, all records pertaining to claims and benefit payments pursuant to the Plans and to any Client for which WASC has provided Services."  R. 11-2, at 6.  While WASC asserts that it complied with this provision, COA contends that "[t]he data provided by the

---

[1] The court also finds that WASC is entitled to summary judgment against the hospitals on the claims for gross negligence and punitive damages for the reasons stated in section II.B.3 of this opinion.

WASC was incomplete and unuseable," R. 70, at 3.  It is prudent to wait until the close of discovery before determining whether a genuine issue of material fact exists regarding whether WASC fulfilled its duties under Section 12 of the MSA.

        3.     *COA's Claims of Gross Negligence and Punitive Damages*

      COA's claims for gross negligence must be dismissed because it failed to allege that WASC acted with malice, willfulness, or wanton disregard for the rights of others. In order to prevail under a gross negligence theory, the plaintiff must show a "conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of which alleged tortfeasor is aware." *Sparks v. Re/Max Allstart Realty, Inc.*, 55 S.W.3d 343, 348 (quoting BLACK'S LAW DICTIONARY 1033 (6th ed. 1990)).  This requires "something more than the failure to exercise slight care . . . there must be an element of either malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." *City of Middlesboro, Ky. v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001) (citing *Cooper v. Barth*, 464 S.W.2d 233, 234 (Ky. 1971)).  In the amended complaint, COA contends that WASC "was grossly negligent in its failure to appropriately process claims."  R. 11, at 6.  Other than this conclusory statement, COA made no factual allegations suggesting that WASC's errors were done maliciously or willfully.  Also, in its response to WASC's motion for summary judgment, COA failed to present any evidence that the errors were made with malice or willfulness. WASC, therefore, is entitled to summary judgment.

      COA argues that WASC was "grossly negligent in its complete abandonment

of its duties." R. 70, at 6. WASC then quotes the expert report of Judy Felhaber, in which she stated, "[t]he data provided by [WASC] was incomplete and unuseable." R. 70, at 7. While Felhaber's report supports the allegation that WASC completely abandoned its duties to take "reasonable efforts to recover any loss resulting in an error in the processing of a claim," R. 11-2, at 7, and to "make available . . . within thirty (30) days [of termination of the MSA] . . . all records pertaining to claims and benefit payments," R. 11-2, at 6, such a claim points only to failure of a contractually imposed duty − that is, a breach of contract. It provides no insight, however, on the issue of whether WASC maliciously or willfully failed to appropriately process the claims. Because COA has failed to allege that WASC's errors were made with malice or willfulness, that claim must be dismissed as a matter of law.

Punitive damages cannot be awarded in an action for breach of contract. K.R.S. §411.184(4); *see also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. Ct. App. 1978); *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 360 (Ky. Ct. App. 1978). To the extent that COA's only remaining claims are for breach of contract, the punitive-damage claim fails as a matter of law.

### 4. Promissory Estoppel

The plaintiffs' claims for promissory estoppel fail as a matter of law. In order to establish promissory estoppel, a plaintiff must show:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 11 (Ky. Ct. App. 1990) (citing *Meade Const. Co. v. Mansfield Commercial Elec.*, 579 S.W.2d 105, 106 (Ky. 1979).  However, "estoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract."  *Tractor Farm and Supply, Inc. v. Ford New Holland*, 898 F.Supp. 1198, 1205 (W.D. Ky. 1995); *Peters Wholesale Furniture, Inc. v. Manchester Furniture Group*, No. 3:04-CV-686-H, 2005 WL 2372046, at *2 (W.D. Ky. Sep. 26, 2005).

In the amended complaint, the plaintiffs contend that WASC "promised to provide certain services, as set forth above and more fully in Exhibit 1," which is the MSA.  R. 11.  Because the MSA is a written contract, the plaintiffs cannot base their promissory-estoppel claim on promises made in it.  Even though the hospitals are not parties to the MSA, the performance that they seek still is "contemplated under a written contract," and, therefore, cannot support a claim for promissory estoppel. Hence, the claim for promissory estoppel must be dismissed as a matter of law.

### 5.   Attorneys' Fees

The plaintiffs, as a matter of law, are not entitled to attorneys' fees.  "As a general rule, in the absence of contractual or statutory liability, attorneys' fees are not recoverable as an item of damages."  *CSX Transp., Inc. v. First National Bank of Grayson*, 14 S.W.3d 563, 569 (Ky. Ct. App. 1999) (quoting *Lyon v. Whitsell*, 245 S.W.2d 926 (Ky. 1951)).  Under Section 4 of the MSA,

> Reasonable and necessary attorneys' fees and costs arising out of any claim for benefits under the Plans . . . shall be the responsibility of the Client.  COA shall cause the Clients

10

> to agree to hold WASC harmless from such claims except to the extent that such claims result from the gross negligence or willful or wanton acts of WASC, its agents or employees.

R. 11-2, at 2. This provision does not require WASC to pay the attorneys' fees of the plaintiffs. In fact, it notes that these fees are the responsibility of the hospitals, not WASC, when they "aris[e] out of any claim for benefits." The MSA also requires COA to secure waivers from the hospitals that hold WASC harmless in all matters relating to claims for benefits except those arising out of gross negligence or willful or wanton acts. Because the MSA does not contain any language that requires one party to pay the other party's attorneys' fees, the court must apply the general rule that attorneys' fees cannot be recovered.

The plaintiffs argue that the MSA "speaks to attorney fees when incurred as a result of WASC's failure to perform its duties under the agreement," but they fail to cite any provision of the MSA that support this proposition. Other than the Section 4, the only provision that mentions attorneys' fees is Section 13 of the Confidentiality Agreement, R. 11-3, at 11. While that section explicitly states that the parties will not object to an award of attorneys' fees to the other party, it is not applicable to the instant case. The confidentiality agreement is a separate contract and is not part of the MSA. Because the confidentiality agreement is a separate contract, its attorneys' fee provision cannot be used to impose an award for attorneys' fee in a suit based on the MSA.

### C.    Motion for Sanctions and Motion to Revise the Scheduling Order

The defendants move for sanctions because the plaintiffs failed to comply with the court's order entered on January 7, 2009, which compelled the plaintiffs to respond to certain discovery requests, and failed to properly disclose their expert witnesses in accordance to the agreed scheduling order.  The plaintiffs do not deny that these delays occurred.  Instead, they argue that the delays were the fault of their counsel and request that the court not dismiss the case "merely to discipline an attorney," R. 70, at 8.  Parties are, however, accountable for the actions of their counsel.  *See, e.g., Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 368 (6th Cir. 1997).  The plaintiffs also assert that the delays have caused no prejudicial effect on the defendants.  This simply is not the case.  The plaintiffs' delay prevented the defendants from proceeding with depositions and expert discovery.  Also, the court is unable to rule on parts of the defendants' motion for summary judgment because of incomplete discovery.

The plaintiffs' failure to comply with the court's order and failure properly to disclose their expert witnesses are not harmless or substantially justified.  Thus, sanctions are appropriate under Fed. R. Civ. P. 37(b) and (c). Nevertheless, because the court can minimize the prejudice to the defendants, the court will limit sanctions to related costs and attorneys' fees.  The court will grant the parties' joint motion to revise the scheduling order, in order to give the parties sufficient time to complete discovery.  Also, several requests at issue in the court's order from January 7, 2009, are now moot since all claims by the hospitals have been dismissed. However, COA must comply with that order within fourteen (14) days from the date of entry of this

12

order to the extent that the discovery requests relate to its breach-of-contract claims. If COA fails to comply, the defendants may reassert their motion for sanctions. Lastly, the court will require the plaintiffs to pay reasonable attorneys' fees and costs for work related to the defendants' motion for sanctions. If the parties are unable to resolve such payment within fourteen (14) days from the date of entry of this order, the defendants shall file a motion for such fees and costs within that 14-day period. Response and reply times will be governed by the Local Rules.

III.   **Conclusion**

Accordingly,

**IT IS ORDERED** that the motion for judgment on the pleadings (R. 57) is **GRANTED**, and the claims against Willis North America, Inc. are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for summary judgment (R. 59) is **GRANTED IN PART** and **DENIED IN PART** in accordance with this opinion. All claims by the hospitals are **DISMISSED**, and COA's claims for gross negligence, punitive damages, and attorneys' fees are **DISMISSED**. The only remaining claims are COA's claims for breach of contract.

**IT IS FURTHER ORDERED** that the defendants' motion for sanctions (R. 58) is **GRANTED IN PART,** and the plaintiffs shall comply with the court's order entered on January 7, 2009, within fourteen (14) days from the date of entry of this order to the extent that the discovery requests relate to their claims for breach of contract.

**IT IS FURTHER ORDERED** that the plaintiffs shall pay reasonable attorneys' fees

13

and costs of the defendants related to work performed on the motion for sanctions (R. 58). If the parties are unable to resolve such payment within fourteen (14) days from the date of entry of this order, the defendants shall file a motion for such fees and costs within that 14-day period. Response and reply times will be governed by the Local Rules.

**IT IS FURTHER ORDERED** that the parties' joint motion to revise the scheduling order (R. 77) is **GRANTED**. They shall have until June 12, 2009, to complete discovery, including discovery related to expert witnesses, and until June 26, 2009, to file dispositive motions. The pretrial conference scheduled for July 20, 2009, and the jury trial scheduled for August 18, 2009, are **SET ASIDE** and **CANCELLED**. A complete scheduling order will issue separately.

Signed on  May 18, 2009

**Jennifer B. Coffman, Judge**
**United States District Court**

14